SEALED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

GEORGE KRITOPOULOS,

Defendant.

CRIMINAL NO.: 18cr10324

Violations:

Conspiracy
(18 U.S.C. §371)

Wire Fraud
(18 U.S.C. §1343)

Bank Fraud
(18 U.S.C. §1344)

Aiding the Submission of False
Tax Returns
(26 U.S.C. §7206(2))

Obstruction of an
Official Proceeding
(18 U.S.C. §1512(c)(2))

Aiding and Abetting
(18 U.S.C. §2)

Criminal Forfeiture Allegation
(18 U.S.C. §§981(a)(1)(C),
982(a)(2) & 28 U.S.C. §2461)

INDICTMENT

The Grand Jury charges that:

General Allegations

At all times relevant to this Indictment:

1. The defendant, George Kritopoulos ("KRITOPOULOS"), resided in Massachusetts.

2. JOSEPH BATES, III was an individual who resided in Massachusetts.

3. DAVID PLUNKETT was an accountant who resided in Massachusetts.

4. Lotus Management, Statewide Group, Texstone Management, and G.K. Citywide Development (collectively, "the Entities") were shell companies controlled by KRITOPOULOS.

5. The following entities were financial institutions as defined in Title 18, United States Code, Section 20: Advisors Mortgage Group LLC, Bank of America, N.A., Everbank, F.S.A., First Choice Bank, Freedom Mortgage Corp., GMH Mortgage Services, LLC, Home Savings of America, FSA, J.P. Morgan Chase Bank, N.A., Mortgage Financial, Inc., New Century Mortgage Corp., Primary Residential Mortgage, Inc., Reading Co-operative Bank, Reliant Mortgage Company LLC, Sovereign Bank, FSB, and Taylor, Bean & Whitaker Mortgage Corp.

The Conspiracy and the Scheme to Defraud

6. From in or about and between 2006 and 2015, KRITOPOULOS, together with JOSEPH BATES, III and others known and unknown to the Grand Jury, conspired to defraud banks and other financial institutions by causing materially false and fraudulent information to be submitted to those institutions on behalf of persons (hereinafter "borrowers") recruited to purchase residential properties located primarily in Salem, Massachusetts.

7. The residential properties were usually multi-family buildings with two to four units, which KRITOPOULOS, together with others known and unknown to the Grand Jury, caused to be converted into condominiums.

8. The individual condominium units sold as part of the scheme included those listed below. The sale of each unit was financed by a mortgage loan issued on or about the dates set forth:

a. 15 Sylvan Street, Unit 2, Salem, Massachusetts (4/11/2006);
b. 51-53 Leach Street, Unit 1, Salem, Massachusetts (6/13/2007);
c. 10 Beaver Street, Unit 1, Salem, Massachusetts (12/12/2007);
d. 10 Beaver Street, Unit 2, Salem, Massachusetts (12/12/2007);
e. 15 Sylvan Street, Unit 1, Salem, Massachusetts (3/17/2008);
f. 42 Cabot Street, Unit 3, Salem, Massachusetts (4/18/2008);
g. 17 Forest Avenue, Unit 3, Salem, Massachusetts (8/25/2008);
h. 8 Chase Street, Unit A, Salem, Massachusetts (12/12/2008);
i. 8 Chase Street, Unit B, Salem, Massachusetts (1/14/2009);
j. 10 Chase Street, Unit B, Salem, Massachusetts (1/26/2009);
k. 10 Chase Street, Unit A, Salem, Massachusetts (5/12/2009)
l. 20 Mason Street, Unit 2, Salem, Massachusetts (9/21/2009)
m. 24 Cabot Street, Unit 3, Salem, Massachusetts (6/23/2010)
n. 18 Mason Street, Unit 1, Salem, Massachusetts (8/26/2010);
o. 22 Grove Street, Unit 2, Salem, Massachusetts (10/25/2011);
p. 9 Turner Street, Salem, Massachusetts (12/16/2011);
q. 22 Grove Street, Unit 1, Salem, Massachusetts (1/30/2012);
r. 9 Turner Street, Unit B, Salem, Massachusetts (7/27/12);
s. 6 Essex Street, Salem, Massachusetts (3/15/2013);
t. 9 Turner Street, Unit A, Salem, Massachusetts (7/02/13);
u. 6 Essex Street, Unit B, Salem, Massachusetts (1/28/2014).

9. Because the alleged purchasers did not in fact have the financial ability to repay the mortgage loans, in many instances they defaulted on their loan payments, resulting in foreclosures and losses to the financial institutions that provided the financing for the condominium units.

<u>9 Turner Street</u>

10. As one example, in or about 2011 and 2012, KRITOPOULOS recruited a borrower to purchase the two-unit residential property located at 9 Turner Street, Salem, Massachusetts. He then caused the property to be transferred to an entity controlled by himself, JOSEPH BATES, III, and the borrower, converted the property to condominiums, and recruited two other individuals to purchase the condominium units.

11. In connection with both the purchase of 9 Turner Street and the subsequent sale of the two units, KRITOPOULOS and his co-conspirators caused to be submitted to financial institutions loan applications containing materially false information, as well as fraudulent documents. The false representations and documents concerned the borrowers' employment, income, bank account, and intent to occupy the property. In addition, KRITOPOULOS and his co-conspirators, including DAVID PLUNKETT, prepared and submitted false tax returns and other tax documents in support of the loan applications.

12. At the closings for each of the 9 Turner Street condominium units, KRITOPOULOS and his co-conspirators arranged for it to appear as if the borrowers were providing the cash due at closing, when in fact the funds came from KRITOPOULOS and his co-conspirators.

13. Based upon the false and fraudulent information and documents submitted in support of the loan applications for the purchase of 9 Turner Street and the two condominium units at 9 Turner Street, the respective lenders approved the loans and advanced hundreds of thousands of dollars in financing. Most of the loan proceeds for the purchase of the individual condominium units were never repaid.

6 Essex Street

14. As another example, in or about 2013, KRITOPOULOS recruited a borrower to purchase the three-unit residential property located at 6 Essex Street, Salem, Massachusetts. He then caused the property to be transferred to an entity controlled by KRITOPOULOS, JOSEPH BATES, III, and the borrower, converted the property to condominiums, and recruited another borrower to purchase Unit B, 6 Essex Street.

15. In connection with both the purchase of 6 Essex Street and the subsequent sale of Unit B, KRITOPOULOS and his co-conspirators caused to be submitted to financial institutions loan applications containing materially false information, as well as fraudulent documents. The false representations and documents concerned the borrowers' employment, income, bank account, and intent to occupy the property. In addition, KRITOPOULOS and his co-conspirators, including DAVID PLUNKETT, prepared and submitted false tax returns and other tax documents in support of the loan applications.

16. At the closing for the re-sale of Unit B, 6 Essex Street, KRITOPOULOS and his co-conspirators arranged for it to appear as if the purchaser provided the cash due at closing, when in fact the funds came from KRITOPOULOS and his co-conspirators.

17. Based upon the false and fraudulent information and documents submitted in support of the loan applications for the purchase of 6 Essex Street, Salem, Massachusetts and Unit B, 6 Essex Street, the respective lenders approved the loans and advanced hundreds of thousands of dollars in financing. Most of the loan proceeds for the purchase of Unit B was never repaid.

18. All together, as a result of the conspiracy and scheme to defraud, the financial institutions funded loans totaling more than $9.5 million, and suffered losses of more than $4.3 million.

Object of the Conspiracy and of the Scheme to Defraud

19. The principal purpose and object of the conspiracy and of the scheme to defraud was for KRITOPOULOS, together with JOSEPH BATES, III and others known and unknown to the Grand Jury to enrich themselves by buying and reselling real estate funded by mortgage loans, including loans insured by the Federal Housing Administration

("FHA"), that were obtained using materially false and fraudulent loan applications and supporting documents..

Manner and Means of the Conspiracy and of the Scheme to Defraud

20. The manner and means by which KRITOPOULOS, together with JOSEPH BATES, III and others known and unknown to the Grand Jury, sought to accomplish the objects of the conspiracy included, among other things, the following:

a. Creating and submitting to financial institutions, on behalf of borrowers, materially false and fraudulent loan applications that included, among other things, representations that the borrowers were employed by the Entities, when, in fact, the borrowers were not so employed; representations about the amount of income the borrowers received from the entities, when, in fact, the borrowers received little or no income from them; representations about the borrowers' income that substantially overstated their true income; and representations that the borrowers intended to live in the properties they were purchasing, when the borrowers in fact did not intend to do so.

b. Causing to be created and submitted to the financial institutions false Internal Revenue Service W-2 Wage and Tax Forms, false pay stubs, and federal income tax returns that contained false employment information and that usually reflected income far greater than that actually earned by the borrowers;

c. Providing false and fraudulent written and oral verifications of the borrowers' employment and income when requested by financial institutions;

d. Causing borrowers' names to be temporarily added to bank accounts that were primarily owned and controlled by JOSEPH BATES, III, in order to deceive lenders that sought to verify the financial information listed on the loan applications;

e. Supplying funds that were due at closing from the borrowers, while making it appear to the closing attorneys that the borrowers had supplied those funds.

OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

21. In furtherance of the conspiracy and to accomplish its purpose and object, KRITOPOULOS, together with JOSEPH BATES, III and others known and unknown to the Grand Jury, committed and caused others to commit at least one of the following overt acts, among others, in the District of Massachusetts and elsewhere:

22. On or about the following dates stated, KRITOPOULOS and his co-conspirators caused the following entities to be organized and recorded with the Massachusetts Secretary of State, each of which was falsely included as a source of employment income on one or more of the loan applications for the properties listed in paragraph 9:

a. Texstone Management LLC (9/16/2007);
b. Statewide Group LLC (4/3/2009);
c. Lotus Management Group LLC (2/17/2009).

23. KRITOPOULOS and his co-conspirators caused the wire transfers described below in Counts Two and Three.

24. In or about November 2011, KRITOPOULOS directed DAVID PLUNKETT to sign a letter submitted to First Choice Bank, in support of the loan application for the purchase of 9 Turner Street, Salem, Massachusetts (which application falsely stated that the borrower had employment income from Lotus Management Group). The letter to First Choice Bank falsely stated:

> This letter is to certify the financial stability of Lotus Management Group, LLC. Lotus has been a client of ours since 2009. It is a multi-million dollar company with 20 employees. Our office has filed all corporate tax returns for the Company for the previous two years. The Company is financially sound and solvent with more than adequate cash reserves.

25. On or about July 26, 2012, KRITOPOULOS and his co-conspirators purchased a $13,598.09 Official Check from Citizens Bank to pay the amount due from the buyer at the closing of the loan financing the purchase of 9 Turner Street, Unit B, Salem, MA.

26. On or about July 2, 2013, KRITOPOULOS and his co-conspirators purchased a $13,388.85 Official Check from Citizens Bank to pay the amount due from the buyer at the closing of the purchase of 9 Turner Street, Unit A, Salem, MA.

27. On or about December 21, 2013, KRITOPOULOS directed DAVID PLUNKETT to sign and submit a letter submitted to GMH Mortgage Services LLC in support of the loan application for the purchase of 6 Essex Street Unit B (which application falsely stated that the borrower had employment income from Lotus Management Group). The letter to GMH Mortgage Services, LLC falsely stated:

> Regarding the matter of Lotus Management Group annual report, the failure to file was an administrative over site [sic]. The annual report and restatement has been filed, please see copies.

28. On or about January 30, 2014, KRITOPOULOS and his co-conspirators purchased a $25,057.70 Treasurer's Check from The Savings Bank to pay the amount due from the buyer at the closing of the purchase of 6 Essex Street, Unit B, Salem, MA.

Obstruction of the Criminal Investigation and False Statements

29. When federal criminal investigators were investigating the mortgage fraud scheme, KRITOPOULOS sought to obstruct the investigation by encouraging others to make false statements and to provide false documents. KRITOPOLOUS also made false statements to federal investigators himself.

30.     On or about February 4, 2014, agents of the United States served grand jury subpoenas on KRITOPOULOS and others, including JOSEPH BATES, III, and DAVID PLUNKETT.

31.     At various times from in or about February 2014 until January 2018, KRITOPOULOS instructed and encouraged others, including but not limited to JOSEPH BATES, III and DAVID PLUNKETT, to make false statements to law enforcement agents of the United States who were conducting an investigation of potential mortgage fraud by KRITOPOULOS and related persons and entities.

32.     For example, in or about February 2014, KRITOPOULOS asked DAVID PLUNKETT to create false tax returns for Lotus Management and to make false statements to law enforcement agents in order to blame the mortgage fraud scheme on JOSEPH BATES, III, and KRITOPOULOS's former tax preparer.

33.     On or about December 14, 2017, KRITOPOULOS met with law enforcement agents and made numerous false statements denying his involvement in a mortgage fraud scheme and preparation of false tax returns, and placing all responsibility for such matters on JOSEPH BATES, III, DAVID PLUNKETT, KRITOPOULOS's deceased former tax preparer, and others.

34.     During the December 14, 2017 meeting, KRITOPOULOUS also provided law enforcement agents with a written statement that was also false in that, among other things, it denied his involvement in a mortgage fraud scheme and preparation of false tax returns, and placed all responsibility for such matters on JOSEPH BATES, III, DAVID PLUNKETT, KRITOPOULOS's deceased former tax preparer, and others.

COUNT 1
Conspiracy
(18 U.S.C. §371)

35. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 34 of this Indictment and further charges that:

36. From in or about and between 2006 and 2015, in the District of Massachusetts and elsewhere, the defendant,

GEORGE KRITOPOULOS,

together with JOSEPH BATES, III and others known and unknown to the Grand Jury, willfully conspired to commit offenses against the United States, to wit:

a. wire fraud affecting a financial institution, in violation of Title 18, United States Code, Section 1343, that is: having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing the scheme, to transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds;

b. bank fraud, in violation of Title 18, United States Code, Section 1344, that is: knowingly executed and attempted to execute a scheme and artiface to defraud a financial institution and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations and promises by submitting false and fraudulent loan applications in connectionwith the sale of residential properties in and around Salem, Massachusetts.

All in violation of Title 18, United States Code, Section 371.

COUNTS 2 AND 3
Wire Fraud; Aiding and Abetting
(18 U.S.C. §§1343 and 2)

37. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 34 of this Indictment and further charges that:

38. On or about the dates below, in the District of Massachusetts and elsewhere, the defendant,

GEORGE KRITOPOULOS,

having devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and which scheme did affect a financial institution, did, for the purpose of executing the scheme, transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, as follows:

| **Count** | **Date** | **Description** |
|---|---|---|
| 2 | 07/27/12 | Wire transfer in the amount of $269,498.21 from the loan funding account of Mortgage Financial, Inc., which account was located outside of Massachusetts, to the account of the closing attorney for the sale of Unit B, 9 Turner St., Salem, Massachusetts, which account was located in Massachusetts |
| 3 | 07/02/13 | Wire transfer in the amount of $354,786.15 from the account of UBS Warburg Real Estate Securities, funding agent for Primary Residential Mortgage, Inc., located outside of Massachusetts to the account of the closing attorney for the sale of Unit A, 9 Turner St., Salem, Massachusetts, which account was located in Massachusetts |

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS 4 THROUGH 9
Bank Fraud; Aiding and Abetting
(18 U.S.C. §§1344 and 2)

39. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 34 of this Indictment and further charges that:

40. On or about the dates below, in the District of Massachusetts and elsewhere, the defendant,

GEORGE KRITOPOULOS,

knowingly executed and attempted to execute a scheme and artifice to defraud and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations and promises, by submitting false and fraudulent mortgage loan applications in connection with the following loans:

| Count | Loan Closing Date (on or about) | Description |
|---|---|---|
| 4 | 9/21/2009 | Mortgage loan in the amount of $293,608.00 made by Reliant Mortgage Co., LLC for the purchase of Unit 2, 20 Mason Street, Salem, Massachusetts |
| 5 | 8/26/2010 | Mortgage loan in the amount of $266,000.00 made by Advisors Mortgage Group, LLC for the purchase of Unit 1, 18 Mason Street, Salem, Massachusetts |
| 6 | 10/25/2011 | Mortgage loan in the amount of $332,000.00 made by Mortgage Financial, Inc. for the purchase of Unit 2, 22 Grove Street, Salem, Massachusetts |
| 7 | 12/16/11 | Mortgage loan in the amount of $272,902.00 made by First Choice Bank for the purchase of 9 Turner Street, Salem, Massachusetts |
| 8 | 03/15/13 | Mortgage loan in the amount of $357,167.00 made by Primary Residential Mortgage, Inc., for the purchase of 6 Essex Street, Salem, Massachusetts |

| | | |
|---|---|---|
| 9 | 1/28/2014 | Mortgage loan in the amount of $408,405 made by GMH Mortgage Services for the purchase of 6 Essex Street, Unit B, Salem, Massachusetts |

All in violation of Title 18, United States Code, Sections 1344 and 2.

COUNT 10
Aiding and Assisting the Submission of False Tax Returns
(26 U.S.C. §7206(2))

41. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 34 of this Indictment and further charges that:

42. On or about February 13, 2013, in the District of Massachusetts and elsewhere, the defendant,

GEORGE KRITOPOULOS,

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a U.S. Individual Income Tax Return, Form 1040, for another taxpayer, for tax year 2012, which return was false and fraudulent as to a material matter, in that it stated at Line 7 that wages, salaries, tips, etc. were $100,138, whereas as the defendant then and there knew, the correct amount was approximately $10,138; and stated at Line 62 that federal income tax withheld was $23,924, whereas as the defendant then and there knew, the correct amount was approximately $931 during that year.

All in violation of Title 26, United States Code, Section 7206(2).

COUNT 11
Obstruction of an Official Proceeding
(18 U.S.C. §1512(c)(2))

43. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 34 of this Indictment and further charges that:

44. From in or about February 2014 and continuing through in or about December 2017, in the District of Massachusetts, the defendant,

GEORGE KRITOPOULOS,

did corruptly obstruct, influence, and impede, and attempt to obstruct, influence, and impede, an official proceeding, that is, a federal grand jury investigation, by, among other things, making false representations to law enforcement agents, and encouraging others to do so, including but not limited to the allegations set forth in paragraphs 29 through 34 above.

All in violation of Title 18, United States Code, Sections 1512(c)(2).

FRAUD FORFEITURE ALLEGATION
(18 .S.C. §§981(a)(1)(C), 982(a)(2), and 28 U.S.C. §2461)

45. Upon conviction of one or more of the offenses alleged in Counts 1 through 9 and 11 of this Indictment, the defendant,

GEORGE KRITOPOULOS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), and Title 28, United States Code, Section 2461, any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of the offenses.

46. If any of the property described in paragraph 45 hereof as being forfeitable pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), and Title 28, United States Code, Section 2461, as a result of any act or omission of the defendant –

a. cannot be located upon the exercise of due diligence;

b. has been transferred to, sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of this Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in paragraph 45 above.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2) and Title 28, United States Code, Section 2461.

A TRUE BILL

FOREPERSON OF THE GRAND JURY

MARK J. BALTHAZARD
SARA MIRON BLOOM
ASSISTANT U.S. ATTORNEYS

DISTRICT OF MASSACHUSETTS; September 18, 2018.

Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK
9/18/2018 @ 12:41pm